286 So.2d 321 (1973)
STATE of Louisiana
v.
Victor LINKLETTER et al.
No. 53571.
Supreme Court of Louisiana.
October 29, 1973.
John M. Shaw, Opelousas, Kearney Tate, Eunice, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, Asst. Dist. Atty., for appellee.
BARHAM, Justice.
The defendants were convicted of simple burglary, a violation of R.S. 14:62. Defendants, Victor Linkletter and Billy Jack Morris, were each sentenced to six years' imprisonment; defendant, Joyce Linkletter, was sentenced to five years' imprisonment. Defendants rely upon twenty bills of exceptions reserved and perfected for reversal *322 of their convictions and sentences. Since we find that Assignments of Errors 1 and 6 (encompassing Bills Nos. 1, 2, 10, 11, 12, 13 and 14) demonstrate reversible error committed by the court below, we need not, and do not, discuss the other bills of exceptions reserved and perfected.
Assignment of Error No. 1, in which the defendants group Bills 1, 10, 11, 12, 13, and 14, complains that the search warrant, under which numerous items introduced into evidence at their trial were seized, was invalid because not based on probable cause. Since the merit of the various defense objections overruled by the trial court depends entirely on the constitutionality of the search of the Linkletter home, we now consider that search. See Code of Criminal Procedure Article 703.
The only warrantless searches and seizures which meet Fourth Amendment standards of reasonableness are searches made incident to a lawful arrest, so-called "plain view" seizures made when an officer is where he has a right to be, "consent" searches, and searches made under exigent circumstances or in close pursuit. If none of these exceptions is applicable, as is the case here, a valid search warrant must form the basis for a search and seizure. The first paragraph of Article 162 of our Code of Criminal Procedure provides:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. (Emphasis supplied.)
The affidavit submitted to the issuing judge in the case sub judice merely set forth that the affiant "* * * has reason to believe that VICTOR LINKLETER has in his possession or has concealed * * *" certain drugs, burglary tools and the fruits of a certain theft or robbery, that the affiant's "* * * belief is based on information supplied by Lt. Rudy Guillory of the Louisiana State Police * * *", that affiant "* * * has reason to believe that the information furnished by Lt. Rudy Guillory is reliable because he has furnished information and proof in numerous other cases" and that affiant "* * * believes that Lt. Rudy Guillory is credible because of his record as an officer of the Louisiana State Police for over ten years."
The defense clearly established, both at the hearing on the motion to suppress and at the trial, that the information possessed by Lt. Guillory, whom the affiant, Sheriff Ledoux, named in the affidavit as the reliable person who supplied the information which prompted the application for a search warrant, did not have personal knowledge of the possession of the named items, but that Guillory's information, passed on to Ledoux, was received from an informant named Eddie Davis. The application therefore set forth only that the sheriff's" good reason to believe" the illegal activity of the defendants was the unexplained belief and information supplied by the trooper; there was no factual statement to support the bare belief set forth therein.
The United States Supreme Court, in the case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) held that a search warrant issued pursuant to an affidavit like the one involved here was illegal and invalid. In Aguilar, the United States Supreme Court struck the search warrant because the affidavit submitted as application for the warrant merely stated that the affiants, having received "reliable information from a credible person" believed that drugs were kept at a certain named location for the purpose of sale and use contrary to law. The Aguilar Court cited the following rule enunciated in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933): "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances *323 presented to him under oath or affirmation. Mere affirmation of belief or suspicion is not enough." The Aguilar Court, quoting from Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), further stated: "* * * it is clear that it [the affidavit] does not pass muster because it does not provide any basis for the Commissioner's determination... that probable cause existed. The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made."
The United States Supreme Court, in Aguilar, reasoned: "The vice in the present affidavit is at least as great as in Nathanson and Giordenello. Here the `mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only `contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an `affirmative allegation' that the affiant's unidentified source `spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession." In summation, the Supreme Court stated: "We conclude, therefore, that the search warrant should not have been issued because the affidavit did not provide a sufficient basis for a finding of probable cause and that the evidence obtained as a result of the search warrant was inadmissible in petitioner's trial."
In State v. Wells, 253 La. 925, 221 So.2d 50 (1969), this Court reversed a defendant's conviction where evidence seized pursuant to a warrant was used against the defendant at trial. In its consideration of the issue, the Court stated: "Nor do we believe that the trial court's observation that the search was illegal [sic, legal], it having been made under authority of a valid warrant, is correct. In our opinion, the warrant was illegally issued, this because the affidavit on which it was based recites nothing more than that the officer seeking the warrant `* * * has reasonable cause to suspect and does suspect and verily believe that a shotgun and other weapons; Spent shotgun shells and other live ammunition; may be located at the residence of Jerry Wells, 510 S. Lebanon St., Hollywood, La. or in the subject's vehicles a White 1966 Dodge Monaco bearing 66-67 La. license 62 D 088 or a Blue 1960 Opel Station Wagon; Above used in attempted murder of Curt Maddox * * *."
The Court further stated in Wells: "Under the rulings of the United States Supreme Court in Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159, and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 such an affidavit, based on mere affirmance of belief or suspicion, is patently defective and, therefore, the warrant issued pursuant thereto is illegal and invalid." The Court in Wells then noted that the same results reached in the cited United States Supreme Court's cases would, aside from those rulings, bereached under our Code of Criminal Procedure Article 162. Wells further states: "The clear and unmistakable language of Article 162 requires, as aforestated, that such facts be contained in the affidavit * * *."
The State argues, notwithstanding the clear mandate of our Code of Criminal Procedure, the United States Supreme Court's decision in Aguilar, and this Court's decision in State v. Wells, that neither the Fourth Amendment of the United States Constitution nor Article 162 of our Code of Criminal Procedure requires that the oath or affirmation or affidavit to support the issuance of the search warrant, upon a finding of probable cause, be entirely *324 in writing.[1] We are compelled to follow the United States Supreme Court's interpretation of the constitutional requirement for establishing probable cause for a search warrant.
We believe that the applying officer did not properly supply the issuing judge with adequate credible information strengthened with sufficient facts to support a judicial finding of probable cause upon which a search warrant could be issued. Further, we reject the State's argument that defendants herein had no right to move for suppression of evidence since Article 703 of the Code of Criminal Procedure only allows a defendant to file a motion to suppress when an unconstitutional search and seizure has taken place, not a mere illegal search and seizure. The United States Supreme Court's decision in Aguilar renders the search and seizure under consideration unconstitutional, not merely violative of the Code of Criminal Procedure.
We conclude, therefore, that the defendants' objections to the evidence obtained as a result of the illegal search and seizure have merit, and that the trial court's refusal to grant the motion to suppress and its permitting the seized evidence to be introduced constituted reversible error.
Assignment of Error 6, which is based on Bill of Exceptions No. 2, complains that the trial court erred in failing to quash the information because the District Attorney failed to furnish a sufficient bill of particulars. The defendants were charged under a short form information; the bill of information reads in pertinent part, as follows:
"* * * Victor Linkletter, Billy Jack Morris, alias Andy Thomas and Joyce Linkletter * * * on or about the 2nd day of May in the year of our Lord, one thousand nine hundred and seventy-one (1971), did commit simple burglary of the building known as Thomas O. Savoie Grocery Sausage & Kitchen, owned and operated by Thomas O. Savoie, in violation of R.S. 14:62, * * *."
In their application for a bill of particulars, the defendants sought answers to the following questions:
12. What specific intent is alleged by the State of Louisiana to have been the basis for the alleged illegal entry?
13. Was a forcible felony or theft committed therein?
The State, in its answer to the defendants' application, represented that it was not obligated to answer these questions since the particulars sought "do not address themselves to the nature and cause of the crime."
In the State's brief, it is contended that the defendants rely principally upon State v. Holmes, 223 La. 397, 65 So.2d 890 (1953) and that the trial court, in its per curiam, based its ruling that the short form indictment was sufficient on State v. Taylor, 253 La. 653, 219 So.2d 484 (1969). The State submits that the two decisions cannot be squared and that Taylor, being a later expression of the Court, may have *325 impliedly overruled Holmes. The State further submits that the application for a bill of particulars was adequately answered relative to the question of intent, in that it adopted all of the testimony on the motion to suppress as part of its answer.
We find the Taylor case inapposite. There the issue was the sufficiency of the short form indictment, not the defendant's right to have answers to questions propounded in an application for a bill of particulars which would inform the accused of the nature and cause of the offense so as to enable him to prepare his defense properly. In State v. Mann, 250 La. 1086, 202 So.2d 259 (1967), with Justice Hamiter as the organ of the Court[2], the following language appears: "It is now well settled that when the state elects to use the short form indictment or information * * * the accused is entitled to a bill of particulars setting out more specifically and in detail the offense charged. And this is particularly true when the alleged crime may be committed in a number of different ways. * * * [citing numerous cases]. Indeed, we have said on numerous occasions that the provisions * * * which require the state to furnish further information by way of a bill of particulars, when so requested by the accused, renders the use of the short form amenable to constitutionally protected guarantees and safeguards. * * * [citing numerous cases]." Many more recent cases have recognized the right. See State v. Wright, 254 La. 521, 225 So.2d 201 (1969); see also State v. Brevelle, 264 La. 164, 270 So.2d 852 (1973); C.Cr.P. Art. 532(4) and Official Revision Comment (4).
In view of this line of jurisprudence, we conclude, consistent with our constitutional mandate (Article 1, § 10, Louisiana Constitution of 1921) and that of the Sixth Amendment of the United States Constitution that the accused be informed of the nature and cause of the offense charged, that the trial court erred in failing to quash the information. We hold that the defendants herein were entitled to have quashed an information that did not sufficiently inform them of the nature and cause of the offense with which they were charged, where the State refused to supply the information to which they were constitutionally entitled by way of answer to their application for a bill of particulars. The State could have specified the intent they sought to prove or could have charged the two intents conjunctively. See State v. Pratt, 255 La. 919, 233 So.2d 883 (1970).
We are not impressed with the State's argument that information regarding the intent charged was adequately supplied by incorporation into its answer of all the testimony on the motion to suppress. Defendants are not required to ferret out of this 70-odd page transcript the simple answer to their questions. The State did not inform the defendants that the information sought relative to intent charged was contained therein.
A discussion of defendants' other assignments of errors is, as hereinbefore stated, unnecessary in light of the fact that we find reversible error in Assignments of Errors 1 and 6.[3]
For the foregoing reasons, the defendants' convictions and sentences are hereby reversed.
SANDERS, C. J., and MARCUS, J., dissent.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
The majority reverses this conviction and sentence on the ground that the officer *326 applying to the magistrate for the search warrant "did not properly supply the issuing judge with adequate credible information strengthened with sufficient facts to support a judicial finding of probable cause ...."
When a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant," Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), and will sustain the judicial determination so long as there was substantial basis for the magistrate to conclude that the objects sought were probably present in the premises to be searched. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
The law requires only that a neutral and detached magistrate be able to draw a reasonable inference from the evidence presented. And the reviewing court should pay substantial deference to the judicial determination of probable cause evidenced by the issuance of the warrant. Id. at 111, 84 S.Ct. 1509. Of course mere affirmance of belief or suspicion is not enough. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). At the same time, an affidavit or a sworn oral showing of probable cause is not to be deemed insufficient because it sets out the observations of another, rather than of the affiant, so long as a substantial basis for crediting the hearsay is presented. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
And the State may show, if it can, that the judge had other sufficient information before him than that contained in the affidavit when the warrant was issued. United States ex rel. Gaugler v. Brierley, 477 F.2d 516 (3d Cir. 1973); Commonwealth of Pa. ex rel. Feiling v. Sincavage, 313 F. Supp. 967 (W.D.Pa.1970); United States ex rel. Pugach v. Mancusi, 411 F.2d 177 (2d Cir. 1969), cert. denied, 396 U.S. 889, 90 S.Ct. 172, 24 L.Ed.2d 163 (1969); United States ex rel. Pugach v. Mancusi, 310 F.Supp. 691 (S.D.N.Y.1970). Nor does the Fourth Amendment require that a record be kept of facts told a magistrate which constitute probable cause to issue a warrant. An oath taken after, rather than before, presentation of the facts to the magistrate has been held sufficient to validate the warrant issued thereupon. Lopez v. United States, 370 F.2d 8 (5th Cir. 1966). It may be said also that an oath is implicit in the information furnished by the party in connection with the written, sworn affidavit. Atwood v. State, 146 Miss. 662, 111 So. 865 (1927). A showing of probable cause is all that the language or spirit of the Fourth Amendment requires, regardless of whether written or oral, part of an affidavit or other document, recorded or not. Gillespie v. United States, 368 F.2d 1 (8th Cir. 1966); United States ex rel. Pugach v. Mancusi, 310 F.Supp. 691 (S.D.N.Y. 1970).
A review of the facts of this case on the issue of probable cause for the issuance of the search warrant is necessary. United States ex rel. Pugach v. Mancusi, 411 F.2d 177 (2d Cir. 1969), cert. denied, 396 U.S. 889, 90 S.Ct. 172, 24 L.Ed.2d 163 (1969).
The affidavit presented which formed the basis of the application for the search warrant made by the Sheriff of St. Landry Parish under oath administered by the District Judge on May 3, 1971 set forth that the sheriff
... has reason to believe that Victor Linkletter has in his possession or has concealed the following items: C.N. S. Drugs, Marijuana, or hallucionogenic drugs, burglary tools, and cash money and checks stolen from the Day and Night Grocery Store in Oakdale, Louisiana, in house bearing municipal number 316 South Court Street, Opelousas, Louisiana, occupied by the said Victor Linkletter. Appearer's belief is based on information supplied by Lt. Rudy Guillory *327 of the Louisiana State Police. Appearer has reason to believe that the information furnished information and proof in numerous other cases. Appearer believes that Lt. Rudy Guillory is credible because of his record as an officer of the Louisiana State Police for over ten years ....
In the early morning hours of May 3, 1971 Sheriff Ledoux went to Judge Gardiner's home and requested the issuance of a search warrant. They went to the courthouse in Opelousas where the sheriff recounted the facts to Judge Gardiner and part of the information was reduced to writing on a typewriter operated by Lieutenant Basile of the State Police. The document was then signed by the sheriff and the judge.
The judge testified under oath at the motion to suppress that because of the information contained in the application and "because of the fact that there are other details that he (the sheriff) gave" to the judge, which were not incorporated in the affidavit, he felt there was probable cause for issuing the warrant. The additional facts, which the judge could recall a year later at the hearing on the motion to suppress, consisted of information that Jerry Wayne Sonnier told one Eddie Davis that he and Linkletter had made a "hit" (referring to the Day and Night burglary) in the country, but that Sonnier had left the money and some of the money bags in the car. The bags were later found in Sonnier's car.
The judge recalled, also, that there was mention of the burglary of Bee's Lounge, in which, it is inferred, Linkletter was involved. He testified also that someone may have supplied information at the time of a burglary of Savoie's Sausage Kitchen, which also involved Linkletter. In connection with this same application, the sheriff informed the judge that narcotics had been seized at a motel in Eunice and that Linkletter was tied in with Sonnier in this transaction.
Lieutenant Rudy Guillory had testified before the judge in other cases. He felt that Guillory was truthful. "I think he is an officer who would not falsify even to make a case in any instance," the judge testified.
The sheriff testified that the affidavit was based upon information he obtained "with" and "from" Guillory and which they received from a liable informer who had furnished them reliable information previously. The facts upon which this information was based were discussed by the sheriff and Guillory with the informers. The basis for the affidavit the sheriff explained was information conveyed to him by Guillory "together with what I had found out too." Plainly, then, the sheriff's affidavit supporting the search warrant was also based on information he personally obtained, in addition to that furnished by Guillory.
He related to the judge the fact of the burglary at the Day and Night Grocery; that narcotics were seized at a Eunice motel, and the facts which led him to believe that there were drugs at 316 South Court Street, Linkletter's residence. He testified that Guillory told him that he had information that Victor Linkletter, Joyce Linkletter or Billy Jack Morris had been seen in the vicinity of the Day and Night Grocery in Oakdale at the time it was burglarized. He testified that Guillory found the money bags in Sonnier's automobile thus proving the reliability of Guillory's informer.
This was not a warrant issued on "mere affirmation of belief or suspicion" as in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In my view the magistrate in the instant case was "informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was `credible' or his information `reliable'." Thus, as *328 the Aguilar Case requires, the inferences from the facts which led to a finding of probable cause were drawn by "a neutral and detached magistrate", as the constitution requires, and not by "a police officer engaged in the often competitive enterprise of ferreting out crime."
To say that Article 162 of the Code of Criminal Procedure requires that the facts relied upon to show probable cause must be "contained in the affidavit" as the Court said in State v. Wells, 253 La. 925, 221 So.2d 50 (1969), does not warrant a conclusion that the affidavit cannot be supplemented by additional information furnished to the magistrate at the time the warrant was issued. The Wells Case stands for the proposition that when an affidavit does not itself supply the information requisite for the showing of probable cause, and no other information is available to the magistrate at the time the warrant is issued, the affidavit is inadequate, not that it may not be supplemented by other facts furnished to the magistrate at the time. The affidavit is designed principally to solemnize the application and place a definite responsibility on the affiant, a deterrent against unreasonable conduct.
Obviously, someone must take the responsibility for presenting the facts asserted upon which a search warrant is to be based, and the person against whom the search is sought to be directed is entitled to be apprised of the identity of that person. This will also enable him to challenge the warrant. When the identity of the accuser is cloaked in secrecy there is no one he can hold responsible. (Fisher, Search and Seizure, 141 [1970])
I do not believe the lawmakers intended that every detail of fact required for probable cause be "contained in" the affidavit document as such.
Moreover, the affidavit supporting the warrant here is much more detailed than the affidavit supporting the issuance of the warrant in Aguilar v. Texas. The affidavit here gives a detailed factual list of the objects of the search, refers to "cash and checks stolen from the Day and Night Grocery Store in Oakdale Louisiana" and gives the names of the informer as "Lt. Rudy Guillory of the Louisiana State Police" and the fact that Lt. Guillory "is reliable because he has furnished information and proof in numerous other cases." The affidavit further set forth that the sheriff believed that "Lt. Rudy Guillory is credible because of his record as a police officer of the Louisiana State Police for over ten years ...."
In the Aguilar affidavit there was no mention of the manner in which the objects of the search had been obtained. Here it was recited that some of the objects listed were "stolen from the Day and Night Grocery Store in Opelousas." In Aguilar there was a general reference to the objects of the search; here the listing was specific. In Aguilar there was no disclosure of the source of the information, or the credibility or reliability of the informer; here both of these facts were disclosed in the affidavit itself. In my opinion these are significant differences and the closely divided Aguilar court would not have invalidated this search warrant as this Court does. State v. Hightower, 272 So.2d 363 (La.1973).
The obvious conclusion to be drawn from the facts and circumstances made known to the issuing magistrate is that a series of professional burglaries involving Linkletter had recently occurred in the area and the "goods" were stored in his residence.
From the far afield questions it is easy to perceive that the defendants did not hope to invalidate this warrant; the object was to use the motion to suppress as a discovery device to obtain the information the District Attorney relied upon for the prosecution.
*329 The majority relies upon another ruling of the trial judge to support this reversal.
The holding is that despite the fact that the short form indictment for simple burglary has been held to be adequate to inform the accused of the nature and cause of the accusation in State v. Taylor, 253 La. 653, 219 So.2d 484 (1969), failure to supply the answers to two requests for bills of particulars invalidates this conviction. The questions are: "What specific intent is alleged by the State of Louisiana to have been the basis for the alleged illegal entry?" and "Was a forcible felony or theft committed therein?"
As I understand the law, the indictment must, by reason of constitutional requirements, inform the accused of the nature and cause of the accusation. La.Const. Art. I, § 10. When the accused is informed of the nature and cause of the accusation against him, the constitutional requirement is met. State v. Wright, 254 La. 521, 225 So.2d 201 (1969). And this constitutional requirement of an indictment cannot be corrected, supplied or supplemented by information furnished in answer to a motion for a bill of particulars. State v. Spina, 261 La. 397, 259 So.2d 891 (1972).
The bill of particulars is a legislative implementation of this constitutional right. It is designed to permit the accused to obtain further information, in a proper case, regarding what the State intends to prove, in order that, in fairness, the accused may more properly defend himself. But the bill of particulars cannot be employed in a fishing expedition for a recital of the details of the State's evidence, nor used as a device to harass the State by demands for nonessential details. Requiring compliance with the motion is largely discretionary with the trial judge. La.Code Crim.Proc. Art. 484 and Comments; State v. Wright, supra. The discretion of the trial judge will not be disturbed in the absence of a clear showing that the judge abused his discretion to the prejudice of the accused. State v. Bailey, 261 La. 831, 261 So.2d 583 (1972).
Saying "The State could have specified the intent they sought to prove or could have charged the two intents conjunctively," this Court reverses this conviction, because these defendants could not be required to "ferret out" of a 70-page transcript the answer to their questions. On this tenuous basis this prosecution, with the extensive expenditure of time, energy and money involved, is to be cast aside and a new trial had. This despite the fact that no claim is made, and the record discloses none, that prejudice resulted to these defendants by denying the bill of particulars requested. La.Code Crim.Proc. Art. 921.
In my view the answers to the bills of particulars requested were obvious, and it was not necessary to allege those facts. An indictment need not allege intent. La. Code Crim.Proc. Art. 472.
Mr. Justice Black expressed my sentiments when he said:
With all respect to my Brethern who agree to the judgment and opinion of the Court, I am constrained to say I believe the decision here is a gross and wholly indefensible miscarriage of justice. For this reason it may well be classified as one of those calculated to make many good people believe our Court actually enjoys frustrating justice by unnecessarily turning professional criminals loose to prey upon society with impunity.
I would let the jury's guilty verdicts stand.
NOTES
[1] This argument is based entirely on a single United States District Court case decided in the Southern District of New York, Pugach v. Mancusi, 310 F.Supp. 691 (1970). Even if we were to assume, for the sake of argument, that the facts supporting probable cause need not be entirely in writing, the circumstances presented here would still not make out a case of adequately and legally established probable cause. In Pugach, the oral basis for the finding of probable cause was statements made by two police officers under oath. The State does not indicate in any way, nor does the record reveal, that the underlying facts given orally to the issuing judge were statements made under oath. This being the case, it is unnecessary in this case for us to decide whether the oral statements made to Judge Gardinier, not incorporated in the affidavit, can establish sufficient basis for a judicial determination of the existence of probable cause.
[2] Justice Hamiter also authored the Taylor and Holmes opinions.
[3] If the State re-tries these defendants, it will wish to note the applicability of our decision in State v. Prieur, 277 So.2d 126 (La.1973) (used in defendants' Assignment of Error No. 10), regarding evidence of other crimes, to the renewed prosecution of the offense.