341 So.2d 307 (1976)
STATE of Louisiana
v.
Paul C. RITTINER.
No. 58118.
Supreme Court of Louisiana.
November 30, 1976.
Rehearing Denied January 21, 1977.
Concurring Opinion January 26, 1977.
*309 Robert McComiskey, Emile A. Carmouche, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Adam L. Ortego, Jr., Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
By bill of information filed October 28, 1975, the State charged defendant, Paul C. Rittiner, with possession of marijuana with intent to distribute, a violation of Section 966 A of Title 40 of the Revised Statutes. Subsequently, on December 17, 1975, the bill was amended to charge "criminal conspiracy to possess marijuana with intent to distribute in violation of LSA R.S. 40:979."
A motion to quash filed by defendant, wherein he contended the bill was defective for failure to charge an overt act, was sustained by the trial court on January 7, 1976. On the same day the State was allowed to amend the bill of information to charge that defendant conspired with five named individuals to possess marijuana with intent to distribute. In this amended bill the State alleged that defendant furthered the conspiracy by ". . . coming to Lake Charles, Louisiana and meeting with the co-conspirators and planning and receiving and assisting in the possession of a large shipment of hashish."
In a jury trial on the amended charge, defendant was found guilty and sentenced to serve five years at hard labor. On this appeal he urges twenty assignments of error, which are grouped into twelve arguments.

Assignment 1
According to the assignment of error
"On the first day of trial of this cause, approximately five and one-half hours after the State and the defendant had announced that they were ready to proceed, and following a lengthy recess, the Assistant District Attorney advised the defendant and the Court that he intended to introduce evidence of an inculpatory nature against the defendant. At that time the State filed a formal Notice of Intent (T.T. 8 and T.T. 79). Counsel for the defendant objected to the introduction of the 768 Notice and to the introduction of any evidence of an inculpatory nature because the Notice of Intent was not timely filed. This objection was overruled by the Court. To this ruling the defense now presents this, his formal assignment of error to the Court's ruling."
To this assignment of error, the trial judge filed the following per curiam:
"On the first day of trial of this cause, and before the open[ing] statements, the *310 Assistant District Attorney filed a formal notice of intent to use evidence of an inculpatory nature against the defendant as required by Article 768 of the Code of Criminal Procedure. Defense counsel objected to the introduction of any evidence of an inculpatory nature because the notice of intent was not timely filed. The objection was overruled by the court.
"C.Cr.P. Article 768 requires that the State shall advise the defendant in writing, prior to beginning the State's opening statement, of the State's intent to introduce a confession or inculpatory statement in evidence. The jurisprudence interpreting Article 768 recognizes its essential purpose as being to afford notice to the defendant of inculpatory statements or confessions sufficient to enable him to prepare his defense as to the issue. State v. Cascote [Lacoste], 256 La. 697, 237 So.2d 871 (1970).
"It is evident that [the] legislature was convinced that adequate time to prepare a defense is afforded the defendant if notice of the State's intent to use inculpatory evidence is given to him before the beginning of the State's opening statements. Such was the procedure followed in this case. The Assignment of Error is without merit."
Defense counsel's objection when the State introduced the Notice of Intent that it would use inculpatory statements was as follows:
"Your Honor, the defense would object to the introduction at this time of any . . . or rather the Notice of Intent as not being timely filed and ask the Court to rule on that objection."
The objection was overruled.
The issue presented by the assignment of error, and the issue considered in the per curiam, was whether the notice of intent to use inculpatory statements was timely filed by the State. The notice was filed prior to the opening statement strictly in accordance with Article 768 of the Code of Criminal Procedure, which provides:
"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
The ruling of the trial judge was correct.
However, in brief here defendant refers to his argument that the State misled him long before the trial by answering to the defense motion for a bill of particulars and prayer for oyer that it had no inculpatory statements for use in evidence.
The motion for bill of particulars asked, "Did the defendants admit to the commission of the offense charged?" To this inquiry the State answered, "No."
The next interrogatory was: "Does the State have in its possession any written confessions, signed by either defendant." To which the State answered, "No."
Finally, the motion asked, "Does the State have in its possession any sound recordings of any oral confessions?" Again the State answered, "No."
The motion for oyer sought the production of oral confessions or statements of an inculpatory nature allegedly made by defendant, together with written and recorded confessions and inculpatory or exculpatory statements. This motion was denied.
Insofar as the motion for bill of particulars is concerned no confession or inculpatory statements were used by the State against the defendant at the trial. The statements apparently relied upon by the defense are those of the witness Zielenski, who testified at the hearing prior to trial to determine whether a prima facie case of conspiracy could be established, ostensibly to meet the requirements of Section 455 of Title 15 of the Revised Statutes.[1]
*311 Zielenski testified to conversations with defendant which were part of the conspiracythe offense charged. By the very nature of that crime conversations of the conspirators are often necessary elements of the offense required to be proven. In such a case these conversations are actually inculpatory, but they do not fall within the definition of inculpatory statements contemplated by Article 768, which requires that the State advise the defense prior to the opening statement that it will introduce confessions or inculpatory statements in evidence.
Conversations which tend to establish the conspiracy are acts which are part of the offense itself, while the confessions and inculpatory statements contemplated by Article 768 are out of court admissions of incriminating facts made after the commission of the crime. State v. Brumfield, 329 So.2d 181 (La.1976). In keeping with this theory, this Court has held that the term "inculpatory statement" refers to "past events." State v. Fink, 255 La. 385, 231 So.2d 360 (1970).
Thus the State's answers to the motion for a bill of particulars were correct. It introduced no confessions or inculpatory statements which it was compelled to disclose. The only conversations relied upon by the State related to those which were part of the conspiracy, utterances of the defendant tending to prove the crime itselfnot admission after the offense.

Assignments 2, 17 and 18
At the beginning of the State's case in chief, the Assistant District Attorney offered into evidence the search warrants obtained in connection with the defendant's arrest. When the defense objected, the Court overruled the objections. Assignment of error 2 was made to this ruling.
Defendant relies in brief on this Court's decisions in State v. Humble, 309 So.2d 138 (La.1975); State v. Paciera, 290 So.2d 681 (La.1974) and State v. Linkletter, 286 So.2d 321 (La.1973). The argument is that the affidavit in support of the search warrant does not set forth facts which establish the requisite probable cause to justify issuance of the warrant. The affidavit, the argument continues, does not set forth that the unidentified informant had ever given prior accurate reports. Further, it does not contain specific independent corroboration of the report of the unidentified informant or set forth how the confidential informant obtained the information.
A review of the detailed affidavit presented in support of the issuance of the warrant establishes that, subsequent to the receipt of the informant's tip, the investigating officers verified the information received. This was done by setting up a surveillance of the parties implicated in the conspiracy whose movements were observed over a two-day period.
During the surveillance, movements and actions were observed which were wholly consistent with the informant's tip to the effect that defendant and his accomplices were preparing to smuggle contraband into the area. In the affidavit it was recited that the parties to the conspiracy went to the dock where the ship carrying the marijuana was docked. There they were observed through binoculars putting several green, canvas, army-type bags into their car trunk.
Upon returning to the motel, where there was continuous surveillance, an officer observed one of the coconspirators take one of those bags into his motel room. An officer detected a heavy aroma of marijuana coming from under the room's door, and heard coconspirator Kompel tell his wife that they had "over a million and a half worth of the stuff."
When several of the conspirators loaded their cars and settled their accounts with the hotel, the officers moved in and arrested all of the coconspirators present. Thereafter the officers sought the warrants which were used in connection with this *312 prosecution. Defendant and his brother were arrested thereafter.
This is not the situation contemplated by this Court's decisions in Humble, Paciera and Linkletter. In those cases the affidavits were based solely on hearsay, unlike the detailed affidavit here. As a preface to announcing its rule in Paciera, this Court restricted the holding to cases where the affidavit submitted to the magistrate is "based entirely on hearsay." In Humble it was specially noted that "[t]he affidavit contains no indication that the affiant attempted to verify the information received from the informant by conducting a surveillance or by any other means." In Linkletter the named informant who supplied the information was shown to have been without personal knowledge of the information he related to the officer who used it as a basis for his application for a warrant.
Probable cause is adequately established for the issuance of the warrants.
Assignment 17 is based upon the denial of the defense motion to suppress the warrants considered above. Assignment 18 relates to a defense objection to testimony of one of the investigating officers concerning the unidentified informant referred to in the search warrant affidavit. The objection was that the informant's tip could not be received in evidence unless his credibility and reliability were established. Later in his testimony the officer narrated the facts learned by a surveillance. Those facts amply corroborated the informant's tip and established his reliability and credibility.

Assignments 3, 4, 8 and 11
When the State called the coconspirator Zielenski to testify to statements made to him by the defendant, the defense objected that there was not yet one shred of evidence that a conspiracy had occurred. It is the defense position that the State must prove a prima facie case of conspiracy by independent evidence before statements of the defendant can be used to establish a conspiracy.
The statute relied upon is Section 455 of Title 15:
"Each conspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
As the plain language of this enactment makes clear, it is designed to attribute assent or approval to all parties to a conspiracy of whatever is done or said by any coconspirators in furtherance of the conspiracy, provided that a prima facie case of conspiracy is established. However, here the objection is to the testimony of one of the coconspirators, Zielenski, in which he reveals statements of the defendant which are in furtherance of the conspiracy. Under these circumstances no effort is being made to attribute assent or approval to defendant of what is said or done by a coconspirator in furtherance of the conspiracy. The State, instead, is attempting to prove defendant's own utterances in furtherance of the conspiracy. It is not what Zielenski said or did which is at issue, the object of his testimony is to prove what defendant said in furtherance of the conspiracy. And, since defendant is the sole party accused in this prosecution, no effort is made to attribute defendant's declarations to another, only to him.
It should be noted, moreover, that Zielenski's testimony referred to in the pertinent assignments of error was heard at a pretrial hearing before the judge alone. This was done, apparently, in an effort to comply with the opinion in State v. Carter, 326 So.2d 848 (La.1975), wherein it was announced that there should be an initial determination that a prima facie case of conspiracy exists before the declaration or acts of one conspirator can be attributed to another. After a protracted hearing in the case at bar, the trial judge concluded that the State had made out a prima facie case *313 of conspiracy by defendant and others to possess marijuana in the state of hashish with intent to distribute. No objection to the ruling was made by the defense.
Later in brief the defense argues that the prima facie case could not be proved with the testimony of a coconspirator. This argument has no substance because the only coconspirator who testified at the hearing to determine whether a prima facie case of conspiracy existed was Zielenski. All of the other proof was by law officers and narcotic investigators. They testified in detail to the elaborate investigation and surveillance conducted and the evidence thus produced was entirely adequate and independent of declarations of the coconspirators. Moreover, when the hearing is conducted out of the presence of the jury, as it was here, there is no rule of evidence in Louisiana which would prevent the State from establishing the prima facie case by the testimony of coconspirators, or by declarations or acts of the conspirators. Cf. People v. Fratianno, 132 Cal.App.2d 610, 282 P.2d 1002 (1955); People v. Ferlin, 203 Cal. 587, 265 P. 230 (1938).
Thus, the defense objection to the testimony at the trial of the coconspirator Josefovitz based upon the ground that no prima facie case of conspiracy existed is without merit.
Another argument under this heading pertains to the defense objection to the introduction of evidence that hashish had been seized. This contention is based on the inadequacy of the affidavit submitted in support of the issuance of the search warrant. Since these contentions were considered in detail under Assignment 1, they will not be reconsidered here.

Assignment 5
The defense asserts that the State failed to prove that the offense occurred in Calcasieu Parish. While there was evidence to the effect that part of the conspiratorial activity occurred in the adjoining parish of Cameron, there was also considerable evidence that the offense occurred in the city of Lake Charles. The trial judge properly took judicial cognizance of the fact that the city of Lake Charles was situated in Calcasieu Parish. La.R.S. 15:422(6); State v. Jackson, 308 So.2d 265 (La.1975).
A conspiracy, of course, being an inchoate crime, can have many more than one "locus". Here the principal acts of conspiracy occurred in Calcasieu Parish. Moreover, the requirement that venue be proven applies to the actual trial, and not to a pretrial hearing to establish only one factorthe admissibility of evidence. No rule of law requires that all elements of the crime be proven at such a hearing.

Assignment 6
Deputy Wourl Fanguy of the Sheriff's Department testified that he was assigned the duties of evidence custodian by that Department. In that capacity he received a package from Detective Steve Nicholson on the 29th day of August 1975. He kept it in his storage room until the day before his appearance as a witness in this trial, at which time he delivered it to Deputy Steve Nicholson at one o'clock in the afternoon. Nicholson returned it to him at five o'clock that same afternoon. Fanguy retained it in his custody until he came to the trial. He said the package had not been changed or modified in any manner and that it was not sealed when delivered to him. Defense counsel pointed out for the record that "the envelope was received in Court today with one of the metal clamps missing." He then objected to the introduction of the envelope because it was not sealed.
The objection was properly overruled. There is no sacramental requirement in the law that evidence envelopes be sealed. However, the lack of seals is a factor which has a bearing upon the weight of the evidence, a matter properly within the cognizance of the jury.
It is not necessary that all possibility of alteration be eliminated for evidence to be admissible, as long as the evidence establishes connexity by a preponderance of the evidence. State v. Jones, 332 So.2d 466 *314 (La.1976); State v. Adams, 302 So.2d 599 (La.1974).

Assignment 7
Before presentation of the State's evidence at the pretrial hearing to establish a prima facie case of conspiracy, the defense moved that the trial judge impose a "gag order" restricting the two newspapers represented at the hearing from publishing the facts brought out at the hearing. The trial judge properly denied the motion.
The First Amendment guarantee of freedom of the press imposes onerous burdens upon those who seek prior restraint upon publication, as the United States Supreme Court held in Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Aside from the single assertion in connection with the motion that reporters from the newspapers were in court that day and that the jury, which was not yet impaneled, should not be made aware of the court proceedings, there is nothing in this record to support the motion.
Without more grounds for the motion in the record, the ruling of the trial judge will not be disturbed.

Assignment 16
Defense counsel objected to the trial judge's charge to the jury, contending that the trial judge failed to charge that specific intent was necessary to convict for the crime of conspiracy. No written special charges were submitted by the defense. La.Code Crim.Pro. art. 807.
Insofar as pertinent to this issue, the trial judge charged the jury as follows:
"I charge you that criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
"The term conspiracy imports an agreement, but the agreement need not be a formal one. It is not necessary, to constitute a conspiracy that two or more persons should meet together, and enter into an explicit or formal agreement for an unlawful scheme, or that they should directly, by words, or in writing, state what the unlawful scheme is to be, and the details of the plan, or means, by which the unlawful combination is to be made effective. It is sufficient if two or more persons, in any manner, or through any contrivance, positively or tacitly come to a mutual understanding to accomplish a common and unlawful design.
"LSA-Revised Statutes 40:966A(1) defines in part the crime with which the defendant is charged as having conspired to commit:
"A. (I)t shall be unlawful for any person knowingly or intentionally;
(1) To . . . possess with intent to. . . distribute a controlled dangerous substance. . . ."

. . . . .
"Criminal intent is an essential element of the crime of conspiring to possess with the intent to distribute the controlled dangerous substance called Marijuana. This criminal intent may be specific or general, as follows:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."

. . . . .
"There are certain elements that constitute the crime charged, each of which must be proven by the State beyond a *315 reasonable doubt to find the defendant guilty of such offense. These elements are:
"(4) The State must prove that the defendant knowingly or intentionally conspired to possess with intent to distribute a controlled dangerous substance called marijuana (hashish)."
In our view the charge was adequate. By charging in the language of the statutes (La.R.S. 14:26 and La.R.S. 40:966A(1)) the jury is informed that the crime of conspiracy requires a "specific purpose of committing any crime." In like manner, by instructing that it is "unlawful for any person knowingly and intentionally: (1) To . . . possess with intent to . . . distribute a controlled dangerous substance . . ." the jury was informed of the requisite intent legally required to possess marijuana with intent to distribute. Having instructed the jury to this effect, it was then necessary for the trial judge to inform the jury of the legal difference between specific and general intent, otherwise how were they to know which was supported by the evidence.
Finally, the trial judge instructed that the State must prove that the defendant "knowingly and intentionally" conspired to possess with "intent to distribute the hashish," and instruction falling squarely within the definition of specific intent.
The charge is adequate, couched as it is in the language of the statutory law on the question of intent in this case. La.Code Crim.Pro. arts. 801-08.

Assignment 12
This assignment reads:
"During the testimony of witness for the defense, Baron Rittiner, an alleged coconspirator, the State made objections to testimony regarding statements of an exculpatory nature made by the defendant to the witness (T.T. 623; 625; 626; 631; 632; 633; 634; 635). The Court sustained the objections.
"Counsel now assigns this his formal assignment of error to the Court's ruling."
The testimony referred to contains the direct examination of defense witness Baron Rittiner, a brother of defendant Paul Rittiner. According to this examination, because Baron was knowledgeable in the field of mechanics, Paul telephoned him in Fort Worth and asked him to come to Lake Charles to help make mechanical adjustments to Paul's boat. In compliance with this request, Baron drove to Lake Charles and met Paul at the Holiday Inn about four o'clock on the morning of August 25. At that time Pat McGowan was in the room where Baron located Paul, but when Baron arrived McGowan left after a brief exchange. Baron testified that at no time during the night did he meet with anyone except Paul and McGowan. Baron said he did not see or speak to Zielenski, Josefovitz or Kompel at that time, and his brief conversation with McGowan when he arrived related only to his trip from Fort Worth. At no time after leaving did McGowan return.
The next morning Paul awakened Baron at 8:30 and they joined McGowan in another room a few doors down. It was while he and Paul were in the room where they joined McGowan that Baron first met Zielenski and Josefovitz. The conversation there, according to Baron, concerned the plans to repair Paul's boat. It was decided that the repairs would be made by Baron later after the boat was removed to Cameron and berthed there.
If the boat were sold to McGowan, Baron said, Paul offered to pay him about $200 or $250 to help with his tuition when he enrolled at the University of Texas in September.
When defense counsel asked Baron, "Your understanding was that you were going to receive $250.00 for your tuition from your . . .", the prosecutor objected. The objection was sustained on the ground that the question was leading.
*316 Defense counsel then said, "Your Honor, I'm recapitulating the testimony that he's already given."
"I assume it is a question," the trial judge responded, "so we will have to call it a leading question."
"Would you tell me again what your understanding was?", defense counsel then asked.
Again the State's attorney objected, and again defense counsel argued, "This is an agreement, Your Honor. This is not conversation. This is perfectly admissible testimony."
"This question has been answered, but we will let him answer it again," the trial judge ruled.
Baron then repeated the understanding he had with Paul, saying he was told that Paul would help him with his tuition, adding that if Paul could sell the boat immediately, they would go dove hunting at Toledo Bend; to which the prosecutor interposed, "He's adding things."
When the judge agreed, defense counsel declared, "[H]e's testifying what he knows of his own knowledge. This is not a conversation that he is relating."
"He started the sentence off with `I am told'," the judge said, and he ruled that the testimony was objectionable, ordered it stricken from the record and admonished the jury to disregard the statement.
Thereafter defense counsel said she would "re-ask" the question, propounding this interrogatory: "What was your understanding of what you were going to receive?"
In reply Baron restated his understanding that he would receive $250 for tuition and books, and if the boat was taken care of immediately he and Paul would go dove hunting. Although the State's attorney objected again, the objection was ignored by the judge and defense counsel continued to question the witness, eliciting again Baron's understanding of what he would receive for fixing the boat.
Baron then testified that, after the meeting with McGowan, Zielenski and Josefovitz, Paul left with Zielenski and Josefovitz to buy the parts which Baron needed to repair the boat.
At this point, defense counsel asked, "Do you know of your own knowledge how he left?"
When Baron answered, "Yes, I . . . instead of him having to unhitch the boat off of his car or drag the boat, I gave him my ignition key because he expressed a desire to use my car . . .", the State's attorney objected and the objection was sustained.
Baron then answered that he wanted Paul to use his car, so he gave him his car key and then returned to rest in the room where he had spent the night.
At no time during interrogation of this witness was the defense ultimately denied the opportunity to elicit "testimony regarding statements of an exculpatory nature," the basis of this assignment of error. This exculpatory explanation was permitted to be brought before the jury by reiterated questioning. At the most, the rulings were harmless, insofar as (only) initially preventing elicitation of statements from a coconspirator in the course of a conspiracy which tended to be exculpatory of one of the coconspirators.
In addition to the quoted questions, the assignment of error also specifies other defense questions to which state objection of hearsay was sustained. See Tr. 623, 625, 626, 635. The defendant now contends that, by sustaining state objections to these questions, the trial court denied him the opportunity to elicit exculpatory information.
As to these rulings, however, the defense did not set forth the grounds for the questions by argument or otherwise. The defense apparently did not question the rulings as to the particular questions at the time (and, in fact, was able by further questioning to elicit the information apparently sought by them).
An irregularity or error in a ruling of the trial judge cannot be availed of after verdict unless the party makes known to *317 the court at the time the grounds for the action of the court desired by him (in this case, to secure an answer from the witness to the question propounded by him). La.C. Cr.P. art. 841. The grounds presently stated by the post-verdict assignment of errorthat the statements made to the coconspirator defendant who made them were not at the time stated to the trial court, nor (as to the particular questions) reasonably implied by the preceding interrogation.
The grounds of error as to these questions, now asserted in this post-conviction assignment of error, were never mentioned directly or indirectly to the trial judge. The object of the requirement that the grounds be stated is to afford the trial judge an opportunity to rule properly or, if indicated, correct an erroneous ruling, thereby avoiding a possible reversal on appeal and the consequent time, effort and expense involved in a new trial. See State v. Powell, 325 So.2d 791 (La.1976). The belated complaint that the objections to these particular questions were erroneously sustained does not present reviewable error.
Nevertheless, considering the assignment of error as a whole, pertinent testimony referred to shows defense counsel was able to elicit from the witness every answer she sought, and the record contains all of the facts and information this witness was expected to bring to the jury. Baron was able to attempt to exculpate his brother by testifying that the purpose of their meeting was not even remotely concerned with the crime charged in this case. His testimony, if believed, supported the view that neither he nor Paul met with anyone from the time he arrived at 4 o'clock until after 8:30 that same morning.
This assignment is without merit.

Assignment 13
In its formal assignment of error the defense claims that the bill of information "did not charge defendant . . . with a specific overt act done in furtherance of the conspiracy." He further alleges therein that "Counsel for Defense filed a Motion to Quash . . . on this basis. The defect in the Bill of Information was never cured."
The facts are: Defendant's motion to quash was sustained, but the trial judge authorized the State to amend the bill to meet the defect. Accordingly, the bill was amended on January 7, 1975 to provide additionally:
"Paul C. Rittiner conspired with Baron E. Rittiner, Leon Zielenski, Chiam Kompel, Jacob Josefovitz and Patrick McGowan to possess marijuana with the intent to distribute, in violation of LSA R.S. 40:979, and furthered that conspiracy by coming to Lake Charles, Louisiana and meeting with the co-conspirators and planning and receiving and assisting in the possession of a large shipment of hashish."
This amendment, by which it is charged that defendant met and planned with the conspirators and received and assisted in possession of hashish, sufficiently supplies the omission of "a specific overt act done in furtherance of the conspiracy." The overt act need not be an unlawful act; it may be any act, however, innocent in itself, accompanying or following the agreement, which is done in furtherance of its object. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950).

Assignments 9 and 10
Here defense counsel asserts that the trial judge, in sustaining the prosecutor's objections, unduly restricted his cross-examination of the coconspirator Jacob Josefovitz. In particular, defense counsel asked, "Have you ever been under a psychiatrist's care, Mr. Josefovitz? When the State's attorney objected, the objection was sustained.
After seventeen pages of crossexamination of this witness, it was permissible to restrict the cross-examination to matters relevant to the issues. In the absence of a showing that psychiatric care would tend to prove bias, interest or corruption, the question was not relevant. A witness cannot be impeached by collateral facts or irrelevant matters. La.R.S. 15:275, 490-92, *318 494; State v. Mason, 305 So.2d 523 (La. 1974).

Assignments 14, 15 and 19
Hymie Kompel, one of the conspirators, was called as a state witness. Having been convicted of the same offense, he was asked if he had seen defendant at the Belmont Motel on August 27, 1975. When he said he couldn't answer the question, the prosecutor dropped the matter. Later the prosecutor asked if Kompel was at the Holiday Inn on that day, Kompel answered that he was, and he was then asked if he spoke to defendant there. He replied that he did. When he was asked what defendant said to him, he replied, "I can't answer that."
The trial judge then informed the witness that if he knew the answer he must reply. Further, the judge said, "If it pertains to the situation that you pleaded guilty to sometime back then you are not entitled to the Fifth Amendment; do you understand me?" He then told the witness that if he persisted in refusing to answer, the court's only alternative was to cite him for contempt, which would very likely involve a jail sentence in addition to the one he was then serving. The consequence would be, the judge warned, that the contempt sentence would interfere with any future parole. The State's attorney then abandoned that line of questioning and the witness was excused.
While assignment of error 14 asserts that the defense moved for a mistrial based on the foregoing remarks of the judge, a search of the record fails to disclose a contemporaneous motion to that effect. The motion was not made "at the time of the occurrence," but was made after the remarks and after an intervening witness had completed his testimony. La.Code Crim.Pro. art. 841.
Assignments 15 and 19 complain that the prosecuting attorney injected his personal opinions in his closing argument. The only statements made by the state's attorney which were objected to were these:
". . . I don't think they went back to the Holiday Inn. I think Jacob Josefovitz messed up right there, but that's the only place he messed up. He didn't lie. He was a bad witness in that he couldn't keep his head together so to speak. He couldn't keep on the subject, but he didn't lie."
Article 774 of the Code of Criminal Procedure provides that the closing argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice.
The prosecutor's remarks did not contain prohibited personal opinion about the defendant's guilt or innocence. The remarks were permissible interpretations of the evidence which had been presented to the jury. These were the prosecutor's views of the evidence, and he is permitted to express them.

Assignment 20
The defense entered an objection to the jury venire, alleging it was not representative of a cross-section of the community because it was based upon a list more than two years old.
A simple objection does not suffice to challenge the petit jury venire. Article 532 of the Code of Criminal Procedure requires a motion to quash as the proper vehicle for raising a contention that the general venire or the petit jury venire was improperly drawn, selected, or constituted. Article 535 requires that it be filed "before commencement of the trial."
In addition to the fact that the issue was not properly or timely raised, no showing has been made that the procedure utilized to select the petit jury venire in Calcasieu Parish does not result in a fair representation of the community. And there is no showing that the list is two years old, the defense ground for this complaint.
For the reasons assigned, the conviction and sentence are affirmed.
*319 SUMMERS, J., concurs and assigns reasons.
SUMMERS, Justice (concurring).
In connection with Assignments 3, 4, 8 and 11 reference is made to the fact that the trial judge held a pretrial hearing, apparently, in an abundance of caution and in an effort to comply with the plurality opinion in State v. Carter, 326 So.2d 848 (La.1975) and thereby avoid the possibility of a reversal. While I do not agree with the decision in State v. Carter, its minority view was in fact complied with here. In my opinion the question of a prima facie case of conspiracy is one to be determined by the jury. The jury must be instructed, therefore, that they must make this determination before attributing to another conspirator the Section 455 "effect" that a conspirator can be "deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise.. . ." When the statute declares "to have this effect a prima facie case of conspiracy must have been established;" it speaks of the "effect" to be given to the declarations or acts and makes that "effect" dependent upon a jury finding that a prima facie case of conspiracy has been established. Equally significant is the fact that the statute does not require that the finding of a prima facie case is a predicate to hearing the testimony of coconspirators; it is only a predicate to giving the statutory "effect" to that testimony. Nothing is said about the order of proof. It is implicit, therefore, in this context that the order of proof be determined by the prosecutor and the judge. La.Code Crim.Pro. arts. 17 and 773. Because in conspiracy the declarations and acts of the conspirators are so often essential elements of the offense itself, denying the State the right to introduce this evidence at the trial, and requiring a pretrial hearing, is to engraft another burdensome and time-consuming procedure by judicial decree upon the present already burdensome pretrial requirements in prosecutions. Section 455 does not make this requirement. See State v. Courtney, 170 La. 314, 127 So. 735 (1930) and State v. Fernandez, 157 La. 149, 102 So. 186 (1924). The Carter minority opinion imposes such an impediment. The rule of the Carter minority opinion presents the additional possibility that the State may be deprived of the right to present to the jury evidence of essential elements of the crime.
I do not subscribe to the rule of the Carter minority.
NOTES
[1] La.R.S. 15:455 provides:

"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."