ST. PAUL, J.
 

 Act No. 221 of 1932, p. 710, § 1, reads as follows: “Whoever shall forcibly seize and carry out of this State, or from one part of this State to another part, or from one part of a Parish of this State to another part of the same -Parish, or whoever shall imprison or secrete,
 
 without authority of lew,
 
 any person or persons, and all persons aiding, advising or abetting in such acts, shall be deemed guilty of the crime of kidnapping, and on .conviction thereof shall suffer imprisonment at hard labor for not more than twenty (20) years.” (Italics by this writer.)
 

 
 *297
 
 I.
 

 The information charges, in substance: That on September 19, 1932, the defendant, Lawrence Kay, did without authority of law, and against her consent, forcibly seize and carry from one parish to another, Mrs. Ada Hood Kay, “she, the said Mrs. Ada Hood Kay, being at the time lawfully separated from the said Lawrence Kay by a judgment of Court (rendered September 9th 1932) decreeing a separation from bed and board between them.”
 

 II.
 

 The facts are these. On September 19th at abont 8 o’clock in the morning, the defendant forcibly seized Mrs. Ada Hood Kay, at her wood pile just outside of her yard, and forced her under threat of death, with a razor, to go with him, hatless, coatless, and stockingless.
 

 He then carried her through woods, fields, and briars, and over the roughest sort of country, a distance of 25 or 30 miles; and when overtaken by the sheriff and his posse, late in the evening of the second day, they had slept in the woods, and had had nothing to eat; and the woman had been given water to drink only twice.
 

 III.
 

 The defendant was convicted and sentenced; and his appeal brings before us twelve bills of exception, all of which, but one, revolve around the proposition that a husband may use force to compel his wife “to live with her husband and to follow him wherever he chooses to reside.” Rev. Civ. Code, art. 120. This is error.
 

 IT.
 

 In the first place the obligation of the wife to live with her husband and follow him wherever he chooses to reside is only the complement of the corresponding obligation of the husband “to receive her and to furnish her with whatever is required for the convenience of life,” in proportion to his means and condition. And this presupposes, of course, that he should
 
 Mmself
 
 have a place in which to reside, and wherein he will furnish her shelter, food, and clothing. So that, even supposing that a husband has the right to compel his wife
 
 6y force
 
 to live with him and follow him whei’ever he chooses to reside, that right cannot stretch so far that he may compel her to wander about with him, unfed, only half clad, and shelterless.
 

 Y.
 

 But the husband has no right to compel his wife,
 
 Vy force,
 
 to live with him and follow him wherever he chooses to reside.
 

 It is certainly her clear duty to do so if he provide for her a place of residence and be ready to receive her there and to furnish her with whatever is required for the convenience of life in proportion to his means and condition.
 

 But if in spite of her duty, without lawful cause, she withdraws herself from the common dwelling and refuses to return and live with him, his remedy is
 
 not
 
 the use of
 
 force
 
 to compel her to do so.
 

 For if the wife could be
 
 forced
 
 to return to her husband’s domicile, in other words, if the husband were entitled to the
 
 custody and control
 
 of his wife, as parents are of their minor child, who “cannot quit the paternal
 
 *299
 
 house without the permission of his father and mother” (Rev. Civ. Code, art. 218), he might, as in the case of his minor child, make his authority
 
 effective
 
 through the medium of the courts of justice, who in such case would be obliged to lend him their aid to regain custody of one who is “incapable of selecting and establishing a domicile of her own choice against the will and consent” of her husband. See Prieto v. St. Alphonsus Convent of Mercy, 52 La. Ann. 631, 688, 27 So. 153, 173, 47 L. R. A. 656. But we take it that no such jurisdiction has ever been exercised by any court in a case involving a wife. For, “When a wife declines to live with her husband,
 
 it is well settled that he
 
 has no legal right by force to compel her to do so." 13 R. C. L. 987, Verb. Husband and Wife, § 4. And, “At present, the law does not recognize a right in the husband to use physical force to control the acts and will of his wife or to compel her to obey his wishes.” 30 C. J. 515, Verb. Husband and Wife, § 28. The law simply calls the refusal of a wife to live with her husband
 
 abandonment;
 
 the only remedy allowed therefor being separation from bed and board. Rev. Civ. Code, art. 138, subd. 5; art. 143.
 

 This view of the case disposes of all the exceptions but one, as aforesaid. The allegation in the information that the parties were, separated from bed and board (which puts an end to their conjugal cohabitation and common concerns, Rev. Oiv. Code, art. 136, in fine) was mere surplusage.
 

 VI.
 

 The only bill of exception not covered by what goes before is bill No. 4.
 

 A witness was permitted to testify that near the place where defendant was shown to have passed, and about the time he passed, he heard a man and woman talking in the dark, and heard the woman say, “Oh Lord, Help me!” and the man say “Hush, and come on” — which was objected to as hearsay; it not being shown that these words were spoken by the defendant or in his presence.
 

 The objection was not good. It was
 
 not
 
 hearsay. The witness was testifying to
 
 an occurrence
 
 at or near the alleged scene of the crime, in the same way as if he had testified that he heard the report of a gunshot, or the fall of a body, or seen the flash of a pistol: The trial judge properly says; “The ■objection went to the effect of the evidence rather than to its admissibility. It was for the jury to determine from all the evidence whether
 
 or not the
 
 conversation came from the defendant and his wife.”
 

 Decree.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, O. J., concurs in the decree, but deems it sufficient to rest the decision in this case upon the fact that Mrs. Kay had a decree of separation from bed and board.