270 So.2d 852 (1972)
264 La. 164
STATE of Louisiana
v.
Lester BREVELLE and Venix Brevelle.
No. 51913.
Supreme Court of Louisiana.
December 11, 1972.
Rehearing Denied January 15, 1973.
*854 Gravel, Roy & Burnes, Richard V. Burnes, Alexandria, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Charles A. Riddle, Jr., District Atty., John A. Boatner, Jr., Asst. Dist. Atty., for plaintiffs-appellees.
DIXON, Justice.
Lester Brevelle and Venix Brevelle were jointly tried before an Avoyelles Parish jury for cattle theft, R.S. 14:67.1.[1] Both were convicted and each was sentenced to serve four years at hard labor in the Louisiana State Penitentiary. On appeal, appellants rely on eight perfected bills of exceptions, none of which merit reversal.
BILL OF EXCEPTIONS NO. 1
Defendants' prosecutions were instituted by short form bills of indictment. Pursuant to C.Cr.P. art. 484, each defendant timely filed a motion for a bill of particulars. In response to the motion, the State informed defendants of the place and the time at which the offense allegedly occurred. Later, at a hearing on the sufficiency of the bill of particulars, the court ordered the State to inform defendants of the name of the calf's owner.
Other information requested by defendants but denied by the court included physical and testimonial evidence in the possession of the State which would tend either *855 to exculpate defendants or to mitigate their sentences; a statement of every act performed by defendants constituting the offense charged; and, generally, a statement of all the "essential facts" constituting the offense charged. The denial of this information forms the basis of Bill of Exceptions No. 1.
Because defendants were charged in a short form indictment, the State was required to furnish them a bill of particulars to define more specifically the circumstances of the charge against the defendants. The State, however, was not required to disclose the evidence by which it expected to prove its case. State v. Bailey, 261 La. 831, 261 So.2d 583 (1972); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967); State v. Barksdale, 247 La. 198, 170 So.2d 374 (1965).
Defendants rely on the suppressed evidence rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) in alleging that they were denied favorable evidence possessed by the State. However, in order to obtain a reversal under the Brady-Giles rule, a defendant must prove that the State possessed evidence favorable to the defendant and that the State willfully suppressed such evidence. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972); Giles v. Maryland, supra, and Brady v. Maryland, supra. In the instant case, the court held a hearing and determined that the State did not possess any evidence favorable to defendants. Hence, the court committed no error when it refused to order disclosure of the allegedly favorable evidence.
Additionally, defendants sought a statement of all "essential facts" constituting the offense charged and of "every act" performed by defendants constituting the offense charged. The indictments and bills of particulars informed defendants of the nature of the offense charged; the time and the place at which it occurred; and the name of the owner of the calf. This information was sufficient to inform defendants of all essential facts constituting the offense charged. State v. Barksdale, supra.
The court properly refused to order the State to inform defendants of "every act" performed by defendants constituting the offense charged. Such an order would have required the disclosure of the evidence by which the State intended to prove its case. The law does not require such a disclosure by the State. State v. Bailey, supra; State v. Hunter, supra.
Bill of Exceptions No. 1 is without merit.
BILL OF EXCEPTIONS NO. 2
In ruling on defendants' motion for the sequestration of witnesses, the trial judge, in the presence of the jury, stated that:
"Mr. Bordelon will not be placed under the rule of sequestration or have to leave the Courtroom because he is the victim of the theft." (Emphasis added.)
Defendants objected to this statement and moved for a mistrial on the ground that the judge had commented on the facts of the case in the presence of the jury which is prohibited by Article 19, Section 9 of the Louisiana Constitution of 1921, C. Cr.P. arts. 772 and 806. The trial judge denied the motion for a mistrial, but immediately corrected himself, stating:
"Yes Sir. I should have said `the alleged victim' of the crime and I correct that gentlemen; you will disregard that statement that he is the victim; he is the alleged victim of the crime and under the law, he can stay in the Courtroom."
Judicial comment upon the facts or the evidence in the presence of the jury is a noncorrectable error which must result in mistrial or reversal. C.Cr.P. 772, C.Cr.P. 806, State v. Lonigan, 263 La. 926, 269 So. 2d 816 (1972); State v. Iverson, 136 La. *856 982, 68 So. 98 (1915); State v. Langford, 133 La. 120, 62 So. 597 (1913).
However, the judicial comment complained of herein is neither a comment upon the facts of the case nor upon the evidence introduced. Rather, the comment, which was made immediately after the selection of the jury and before any evidence was introduced, was a comment upon the accusation made against defendants.
Bill of Exceptions No. 2 is without merit.
BILL OF EXCEPTIONS NO. 3
Defendants requested the sequestration of all witnesses at the beginning of trial. The court ordered the sequestration, but permitted the alleged victim of the crime, Huba Bordelon, to remain in the courtroom. The court made this exception to the sequestration order at the request of the State who argued that the sequestration rule, C.Cr.P. art. 764, is not mandatory as to the victim of the alleged crime. Defendants objected to the ruling and reserved Bill of Exceptions No. 3. Then, defense counsel re-urged both the mistrial objection and the objection to the sequestration order, particularly stressing the adverse cumulative effect of the two rulings. The trial judge overruled the objections and immediately following these rulings, defense counsel stated:
"In view of the ruling that has been made by the court with respect to the excepting Mr. Bordelon from the rule of sequestration, I move that the rule of sequestration be vacated and voided as to all witnesses."
The trial court vacated the sequestration order and the case was tried with all witnesses present in the court.
C.Cr.P. art. 764 provides that:
". . . upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom . . . The court may modify its order in the interest of justice."
Recently, in State v. Simpson, 259 La. 94, 249 So.2d 536 (1971), this court held that when a sequestration request is made by either the State or the defendant, the judge "must grant the order which he is entitled to modify at the time it is granted or thereafter `in the interest of justice.'" (249 So.2d at 537).
Although the record before us does not necessarily establish that excusing the victim of the offense from the sequestration order was "in the interest of justice," neither does it establish that an injustice was done, nor that defendants were prejudiced in any way. The court's per curiam does not explain why excusing Bordelon from the rule was "in the interest of justice," nor do the defendants explain why the exception was not "in the interest of justice." In fact, their motion to vacate the sequestration order as to all witnesses indicates to us that they either acquiesced in the court's ruling or that Bordelon's presence in the courtroom, as well as that of the other witnesses, was not prejudicial to the defendants' case.
Therefore, we conclude that the court's modification of the sequestration rule does not require reversal.
Bill of Exceptions No. 4 was not perfected.
BILLS OF EXCEPTIONS NOS. 5, 6 and 7
The State's case against defendants was founded upon the testimony of one Elbert Reynolds. Defendants argued that Reynolds was the actual cattle thief and had implicated them merely to save himself. In an apparent effort to prove this theory, defense counsel cross-examined Mrs. Reynolds concerning her efforts to visit her husband at the sheriff's office on the night of the alleged crime. After arriving at the sheriff's office, she was not *857 allowed to speak to her husband until about an hour had elapsed. Defense counsel asked Mrs. Reynolds the following question: "Did they give you any reason why you couldn't talk to your husband during this hour?" Before she could answer, the State objected on the ground that her answer would be hearsay. The court sustained the objection and defendants reserved Bill of Exceptions No. 5.
The court incorrectly sustained the objection. The witness' answer would not have been hearsay because it was not being offered for the truth of its content. Rather the answer would only have shown that she was given a reason for the delay. C. McCormick, Handbook of the Law of Evidence § 225 (1954). Contra, State v. Evans, 249 La. 861, 192 So.2d 103 (1966).
Continuing his line of questioning, defense counsel asked: "Didn't you say awhile ago you could hear some loud talking?" Mrs. Reynolds stated in response: "I heard them call . . . I thought I understood them to say . . ." At this point, the State objected that anything Mrs. Reynolds heard at the sheriff's office would be hearsay. Defense counsel argued that such testimony would be admissible as part of the res gestae. The court sustained the State's objection and defendants reserved Bill of Exceptions No. 6.
Such testimony was not admissible under the res gestae exception to the hearsay rule because the statements sought to be introduced were not "immediate concomitants" of the alleged criminal act. The statements were disconnected from the criminal act in both time and place. Furthermore, the statements were not "necessary incidents" of the criminal act. R.S. 15:448.
However, the court erroneously sustained the objection on the ground that the question called for the introduction of hearsay evidence. The answer would not have been hearsay because the words were not being elicited for the truth of their content, but rather to show that certain utterances were made. Because the answer would have been relevant, the witness should have been allowed to respond to defense counsel's question. State v. Gonzales, 258 La. 103, 245 So.2d 372 (1971); State v. Kay, 176 La. 294, 145 So. 544 (1933); State v. Thomas, 159 La. 1076, 106 So. 570 (1925), C. McCormick, Handbook of the Law of Evidence § 228 (1954).
Although the court's rulings are incorrect, neither bill merits a reversal of applicants' convictions. After examining the entire record, it neither appears that the errors complained of in these two bills have resulted in a miscarriage of justice nor that the errors have prejudiced the substantial rights of the accused. C.Cr.P. art. 921.
Bill of Exceptions No. 7 was reserved when the State asked defendant Venix Brevelle on cross-examination to testify concerning the statements made to him by the arresting deputies. Defense counsel objected on the ground that the question might call for certain hearsay testimony of third persons if such testimony had been related to defendant by the arresting deputies. The court ruled that the answer would be admissible even if it included such testimony and defendants reserved their bill of exceptions.
Venix Brevelle's resulting testimony included no such third party statements. Therefore, whether the court was correct or incorrect in its ruling is a moot issue. Bill of Exceptions No. 7 is without merit.
BILL OF EXCEPTIONS NO. 8
Defendants moved for a new trial pursuant to C.Cr.P. art. 851(1) and (5). The motion was based on two contentions: (1) that the State had suppressed evidence favorable to defendants and (2) that there was no legal evidence to support defendants' convictions.
After a hearing on the suppression issue, the court determined that the *858 State did not possess and had not possessed the evidence allegedly suppressed. Therefore, the suppression contention presents no issue for our determination. C.Cr.P. art. 858.
Defendants' second contention arises out of their theory that a cattle theft (R.S. 14:67.1) becomes complete with the killing of the cow. After the death of the cow, they contend, there can only be theft of the carcass which would be a violation of R.S. 14:67. Therefore, defendants contend that only one of the persons[2] involved in the incident could be legally guilty of cattle theft.
Applicants' contention is without merit for two reasons. First, the jury could legally have found that both defendants were principals to the crime of cattle theft, and, as such, were both guilty of cattle theft. Second, there is no authority in our law for the proposition that a dead cow may not be the subject of a cattle theft. The wording of R.S. 14:67.1 does not support such a restriction. Hence, Bill of Exceptions No. 8 is without merit.
The convictions and sentences are affirmed.
SANDERS, J., concurs in the decree only.
BARHAM, J., dissents with reasons.
TATE, J., concurs and assigns reasons.
TATE, Justice (concurring).
I concur in the majority opinion except for the observation, by way of dicta, that seems to imply that a dead cow (beef) can be the subject of a cattle theft, requiring mandatory penitentiary punishment, La.R. S. 14:67.1.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 3 was reserved when the court refused to include in the order of sequestration the alleged victim of the crime who was a principal witness. As the majority has correctly found, the record does not show that excusing the victim-witness from sequestration was "in the interest of justice", the discretionary exception provided in Code of Criminal Procedure Article 764. However, the majority here found that the defendants acquiesced in the court's ruling and that the ruling was not prejudicial to their case. I reach a contrary conclusion. For some reason a number of courts in this state believe the victim or principal witness in a criminal prosecution has a right to remain in the courtroom and even to join the district attorney at the counsel table while all other witnesses are sequestered. There is no foundation in law for this procedure, nor will the ends of justice be served by it. See my dissent in State v. Flanagan, 254 La. 100, 222 So.2d 872 (1969). In State v. Carter, 206 La. 181, 19 So.2d 41 (1944), the conviction was reversed under this court's conclusion that to allow the State's witnesses to remain in the courtroom while defendant's witnesses were excluded under sequestration constituted "[unquestionably] a distinct advantage to the state and a disadvantage to the defendant". See also State v. Lewis, 250 La. 876, 199 So.2d 907 (1967).
After the adverse ruling and the reservation of the bill of exceptions in the case at hand, defense counsel was faced with suffering the disadvantage of lack of effective cross-examination of the State's principal witness while affording the State the advantage of a full-scale cross-examination of the defense witnesses. If he chose to stand upon his exception to the ruling, he was faced with the possibility that this court would refuse to reverse on a finding of harmless error and with the absolute *859 certainty that he must proceed at a great disadvantage. When the court's ruling so favored the State, defense counsel acted to protect the defendants in the trial before the jury. He asked that all witnesses be permitted to remain in the courtroom if the prosecuting witness was to be exempt so that the defendants' and the State's witnesses would have equal opportunity to listen to all of the testimony in the case.
Defense counsel's motion was good, his objection to the adverse ruling was timely, the ruling was incorrect, and the defendants neither waived their right under the objection nor consented to the error in the ruling. Counsel acted to preserve this legal error and to protect the defendants by the only means then available. To except the victim from the order of sequestration was reversible error. Prejudice was not removed when the defendants availed themselves of the only method left to them under the ruling for removing a serious disadvantage for the trial before the jury.
I respectfully dissent.
NOTES
[1] "Theft of cattle, horses, mules, sheep, hogs, or goats is the misappropriation or taking of such cattle, horses, mules, sheep, hogs, or goats belonging to another, either without the consent of the owner to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of the cattle, horses, mules, sheep, hogs, or goats is essential.

"Whoever commits the crime of theft of cattle, horses, mules, sheep, hogs, or goats shall be imprisoned at hard labor for not less than one nor more than ten years."
[2] Four persons were involved in the cattle theft incident: the State's primary witness, the two applicants and a third defendant who was acquitted.