429 So.2d 862 (1983)
STATE of Louisiana
v.
Tommy Wayne THOMPSON.
No. 82-KA-0728.
Supreme Court of Louisiana.
April 4, 1983.
*863 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Bob Hester, Asst. Dist. Attys., for plaintiff-appellee.
David Price, New Orleans, David Randall Buckley, Baton Rouge, The Office of the Public Defender, for defendant-appellant.
LEMMON, Justice.
This is an appeal from convictions of attempted first degree murder and armed robbery and consecutive sentences of 45 and 30 years imprisonment at hard labor. The principal issues involve defendant's mental competency to stand trial, his mental condition at the time of his confession, and the burden of establishing insanity at the time of the offense. Other assignments of error are sequestration violation and excessive sentence.

Facts
The victim was defendant's 66-year old landlady. When she entered her home through the locked front door on October 14, 1976, defendant jumped out from behind *864 the door and began beating and trampling her. Although she begged defendant to take her money and not harm her, he repeatedly asserted that he was there to kill her. After a merciless beating which left one of the victim's eyes outside of the socket, defendant strangled her with the strap of her purse until she was unconscious and then left her for dead. The beating left the victim sightless in her left eye and unable to work or to live at home alone without supervision.

Mental Capacity to Proceed
After defendant was charged, the trial court appointed a sanity commission, composed of two physicians, to report on defendant's mental capacity to proceed.[1] When the doctors opined that defendant lacked the mental capacity to understand the nature of the proceedings against him and was unable to assist in his defense, the trial court ordered defendant to the forensic unit of a state mental hospital on January 11, 1978. See La.C.Cr.P. Art. 641. Additional sanity hearings, conducted on July 7, 1978 and July 22, 1980, resulted in the same finding.
The hospital staff reported in February, 1981 that defendant had the requisite capacity to stand trial.[2] The trial court reappointed the same sanity commission, and the doctors submitted written reports. On May 6, 1981, counsel submitted the matter to the court on the reports of the doctors, and the trial judge ruled that defendant had the mental capacity to proceed. When the trial began on October 26, 1981, defense counsel again objected to the proceedings on the basis of defendant's mental incapacity, but did not present any further evidence.
The critical determination of an accused's capacity to stand trial is whether he is able to understand the proceedings and to assist in his own defense.[3] The reports of the doctors comprising the sanity commission indicated that defendant was coherent and well oriented as to time, place and situation, that his grasp of reality was good, that he was not having delusions at the time, and that he remembered considerable use of drugs on the day of the offense.
Defendant contends, however, that the trial judge relied too extensively upon the written psychiatric reports and thereby committed the ultimate decision of defendant's competency to the psychiatrists. However, the reports did not consist of mere conclusions concerning defendant's capacity to proceed, but set forth the factual considerations which led the doctors to their conclusion. For example, the reports clearly indicated marked differences in defendant's behavior before and after his confinement in the mental hospital. The reports also fully supported the conclusion that defendant at the time of trial understood the charges, the proceedings, and the consequences, *865 that he recalled his actions and whereabouts on the day of the crime (at least until he voluntarily used drugs), and that he was able to evaluate alternatives and make decisions regarding the trial. Furthermore, the testimony of both psychiatrists at defendant's trial on the merits thoroughly reviewed written reports submitted at the pretrial hearing.[4]
We conclude that the trial court did not err in determining that defendant had the capacity to stand trial.

Admissibility of Confession
Defendant contends that the trial court erred in denying the motion to suppress his confession.
When insanity is the basis of a motion to suppress a confession, the state must prove that defendant had the mental capacity to waive his right against self-incrimination. La.C.Cr.P. Art. 703 D; La. R.S. 15:451; La. Const. Art. I, § 16 (1974); State v. Trudell, 350 So.2d 658 (La.1977). Great weight is accorded to the trial court's determination of whether the state has satisfied its burden of proof.
The police officers who took defendant's confession testified that defendant appeared rational and coherent at the time. In the confession, defendant was able to describe with great particularity the detailed circumstances of his crimes and the events surrounding them. He stated that his clothing had become "blood soaked" during the "beating and robbery" and that he burned the clothes after buying two new leisure suits. Defendant also described how he pried the lock off a utility shed in back of the house with a screwdriver and then used a fork to jimmy the house lock. He described how he had choked the victim with her purse strap and robbed her, noting that she "bled quite a bit". Additionally, one psychiatric expert opined that defendant, at the time of the offense (which was only five days before the confession), "was probably in control of his faculties".
The state's evidence provided a sufficient basis for the trial court's conclusion that defendant was rational, coherent and able to comprehend the meaning and significance of his confession to his crimes.[5] The evidence also supported the judge's conclusion that the confession was freely and voluntarily made. See State v. LeFevre, 419 So.2d 862 (La.1982).

Burden of Proof of Insanity
Defendant contends that requiring the defense to prove insanity at the time of offense by a preponderance of the evidence constitutes a denial of due process. Defendant also argues that the application of two different burdens of proof (the state must prove the essential elements of the offense beyond a reasonable doubt and the defense must prove insanity at the time of the offense by a preponderance of the evidence) when insanity is pleaded as a defense, is confusing to the jury. Alternatively, defendant argues that presentation of "some evidence" of insanity should shift to the state the burden of proceeding with rebuttal proof beyond a reasonable doubt. See United States v. Brawner, 471 F.2d 969 (D.C.Cir.1972).
Insanity is an exculpatory fact which constitutes an affirmative defense. La.C.Cr.P. Art. 652. Due process does not prohibit placing the burden of proving an exculpatory fact on defendant. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The prosecution's burden is to prove every essential element of the crime beyond a reasonable doubt. In relying on the defense of insanity, the defendant does *866 not challenge the existence of any essential element of the crime, and requiring the defendant to prove insanity does not shift the burden to disprove an essential element.[6] Moreover, the United States Supreme Court recently declined to adopt on a constitutional basis a requirement that the prosecution must disprove facts constituting an affirmative defense. Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). See also Rivera v. Delaware, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976); State v. Roy, 395 So.2d 664 (La. 1981); State v. Lee, 395 So.2d 700 (La.1981).

Sequestration of Witnesses
Defendant contends that the trial court erred in allowing sequestered witnesses to remain in the courtroom after testifying.
The sequestration order was in effect for all of the witnesses until the presentation of closing arguments, at which time the order was lifted only for the victim and her son. Defense counsel objected, stating that, in the event of mistrial, the victim's testimony at a second trial would be affected. Also, he urged that their remaining in the courtroom would prejudice the jury.
The purpose of sequestration is to prevent the witnesses from being influenced by testimony of prior witnesses and to strengthen the effectiveness of cross-examination in developing facts. State v. Williams, 346 So.2d 181 (La.1977). Releasing certain witnesses from the rule of sequestration, after the witnesses have testified, does not in any manner defeat the purpose of the rule or lessen its effectiveness. See State v. Brevelle, 270 So.2d 852 (La. 1974). Moreover, the mere presence of the victim in the courtroom during closing argument does not give rise to any suggestion of prejudice.
This assignment lacks merit.

Excessiveness of Sentence
Defendant contends that his two consecutive sentences are excessive. He argues that the 45-year sentence imposed on the attempted first degree murder conviction is excessive, because (1) it is only five years short of the maximum, and because (2) the 45-year sentence is to be served consecutively with his 30-year sentence for the armed robbery conviction.
On the facts of this case, defendant's sentence is neither needless nor disproportionate. The trial court emphasized defendant's prior felony conviction for simple robbery in 1976 and the brutal manner in which he committed the present crimes. Although defendant is only 26 years old and has a history of mental problems, he could have been billed as a multiple offender, thereby doubling his sentencing exposure. Moreover, the 30-year sentence was only one-third the maximum which could have been imposed.
Under the circumstances of this case, the trial judge did not exceed his sentencing discretion in imposing a total of 75 years imprisonment on this particular offender for these particular crimes. See State v. Day, 391 So.2d 1147 (La.1980).
The conviction and sentence are affirmed.
NOTES
[1] Defendant had been admitted to a state mental health facility in May, 1976, after cutting his wrists during incarceration on misdemeanor charges.
[2] Reports of testing at the mental institution suggested that defendant was extremely manipulative and used or created symptomatology to serve his purposes.
[3] In State v. Bennett, 345 So.2d 1129 (La. 1977), this court stated:

"Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial." 345 So.2d at 1138.
[4] While the psychiatrists' testimony at trial was directed to the legal defense of insanity, the psychiatric evidence was illuminating as well on defendant's capacity to proceed.
[5] There was no issue as to the identity of the robber. The state introduced the confession (given five days after the crime) primarily to show defendant's mental condition at that point in time. Defendant's detailed and accurate account of the crime raised an inference that he was also rational and coherent at the time of the crime, thereby rebutting the defense of insanity.
[6] As Justice Rehnquist noted in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime.