GULOTTA, Judge.
Defendant appeals her conviction for manslaughter in violation of LSA-R.S. 14:31. Because we conclude that the trial judge prejudicially erred by curtailing the defendant’s voir dire examination and by failing to give a complete general charge to the jury on the elements of the offense, we reverse and set aside the conviction and sentence.
On June 21,1981, three month old Cedric Wade was found dead in an apartment in the Desire Housing Project where he resided with his mother and her five other children. When an autopsy revealed that the primary cause of death was emaciation, Cedric’s mother, Sheila Wade, was charged by a bill of information with manslaughter in violation of LSA-R.S. 14:31. After the jury in her first trial was unable to reach a verdict, defendant was retried and found guilty as charged. She was sentenced to serve three years at hard labor.
Although defendant has raised several assignments of error, we discuss only two *116 of those that constitute grounds for reversal.
VOIR DIRE EXAMINATION
In her first assignment of error, defendant contends the trial judge committed reversible error by failing to allow the defense attorney to ask prospective jurors if they might be prejudiced or influenced against her because she was unemployed, unmarried, dependent on welfare, and had custody of seven children. When defense counsel attempted to question the jury in these areas, the trial judge sustained the prosecution’s objection, as set forth:
“BY MR. BLAIR [Defense Counsel]: Is there any reason why any of you think you might not be able to sit here today, and give Miss Wade a fair and impartial trial? Lastly, and it may come out during this trial, that the time this event occurred, Miss Wade was unemployed
“BY MR. WILLIAMS [Prosecutor]: Your Honor, I object to that. That’s beyond the scope of voir dire.
“BY THE COURT: Objection sustained.
“BY MR. BLAIR: Your Honor, I would like to finish the question ...
“BY THE COURT: Objection sustained.
“BY MR. BLAIR: Note my objection. I think it’s a very relevant issue in this case, and I think it needs to be broached with the jury.
“BY THE COURT: You’re asking them for their qualifications. You’re not ...
“BY MR. BLAIR: That’s all I’m asking, Your Honor. I’m asking whether this particular factor would influence their verdict.
“BY THE COURT: I’ve already ruled.”
An accused has a constitutional right to a full and complete voir dire examination. LSA-Const. Art. I, § 17. The purpose of voir dire is to determine the qualifications of the prospective jurors by testing their competency and impartiality. State v. Williams, 457 So.2d 610 (La.1984). Although LSA-C.Cr.P. Art. 786 affords the trial judge discretion in conducting the voir dire examination (as claimed by the State), a defendant’s right to exercise challenges intelligently may not be curtailed by excluding non-repetitious voir dire questions that reasonably explore the jurors’ potential prejudices, predispositions, or misunderstandings relevant to the central issues of the particular case. State v. Duplessis, 457 So.2d 604 (La.1984); State v. Brumfield, 482 So.2d 207 (La.App. 4th Cir.1986). To obtain a reversal of his conviction, a defendant need only prove that he was denied his constitutional right of full voir dire examination and that such denial resulted in an inadequate record for considering his challenges for cause. The defendant does not have to make an additional showing of injury resulting from the trial judge’s action. State v. Sexton, 477 So.2d 124 (La.App. 4th Cir.1985); State v. Jarrean, 476 So.2d 1 (La.App. 4th Cir.1985).
After reading the transcript of the voir dire examination in the instant case, we conclude that the defendant had a right to question prospective jurors to discover any prejudice toward her as an unwed mother of seven children whose only source of income was welfare. These factors very well could have caused her to be judged by her socio-economic condition or prejudice towards welfare recipients rather than her actual guilt of the crime. By curtailing examination in this sensitive area, the trial judge denied defendant her constitutional right to a full voir dire examination and precluded her from intelligently exercising her peremptory challenges.
Under these circumstances, we are compelled to reverse the conviction.
JURY INSTRUCTIONS
We likewise find merit in defendant’s contention that the trial judge erred in failing to charge the jury fully on the elements of the crime of manslaughter.
During jury instructions, the trial judge defined manslaughter in part as a homicide committed without any intent to cause death or great bodily harm while the offender is engaged in the perpetration or attempted perpetration of a felony not enumerated in the murder statute or of an intentional misdemeanor directly affecting *117 the person. He further defined the underlying crime of cruelty to juveniles as the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifible pain or suffering is caused to the child. The judge also charged the jury that lack of knowledge of the child’s age shall not be a defense, and defined specific and general criminal intent. He failed, however, to define criminal negligence or to specify whether the crime of cruelty to juveniles was a felony or an intentional misdemean- or.
As soon as the jury retired, defense counsel objected that the trial judge had failed to define the applicable standard of criminal negligence. The judge overruled the objection on the grounds that defendant had failed to make a written request for a special charge on this issue.
Appealing, defendant contends that reversible error occurred since criminal negligence was an element of the predicate crime charged. According to defendant, because no definition of criminal negligence was given to the jury, it may have found her guilty of manslaughter by concluding that she had breached some lesser standard of negligence in caring for her child. We agree.
Because the crime of cruelty to juveniles is the predicate felony offense for the manslaughter charge, and because the State was attempting to prove that the defendant’s actions or inactions toward her child were either intentional or criminally negligent, the trial judge should have fully informed the jury of the elements of the predicate crime by defining the standard of criminal negligence as set forth in LSA-R.S. 14:12.[1] Because the judge failed to charge the jury concerning this standard, it is conceivable that the jury applied some lesser degree of negligence in determining that the defendant had committed cruelty to a juvenile and that the child’s death had resulted during her perpetration of this predicate offense. Accordingly, we conclude that this incomplete charge tainted the jury’s verdict.
In so holding, we reject the State’s argument that defendant cannot raise this issue on appeal since she failed to request at the trial level that a special charge be given to the jury as required by LSA-C.Cr.P. Art. 807. The trial court’s error in failing to define criminal negligence as an element of the predicate crime of cruelty to a juvenile is fatal to the general charge to the jury. See LSA-C.Cr.P. Art. 802(1); State v. Williams, 346 So.2d 181 (La.1977). A full definition of this predicate offense, including the standard of criminal negligence, was an essential element of the offense in this case. An objection to the general charge is properly preserved when made immediately after the jury has retired, particularly if that is the first opportunity to object. State v. Mack, 403 So.2d 8 (La.1981). The objection in this case was made immediately after the jury retired and within such time as the court could have reasonably cured its error by recalling and recharging the jury. See LSA-C.Cr.P. Art. 801. Because the error concerned the general charge, and because the defendant timely objected, we conclude that she is entitled to a reversal, even though she did not file a special written charge before jury instructions were given.
Accordingly, defendant’s conviction is reversed and the sentence vacated. The case is remanded for a new trial.
CONVICTION REVERSED; SENTENCE VACATED; REMANDED.

. LSA-R.S. 14:12 defines criminal negligence as follows: "Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.”